UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TODD ROMERO                                        CIVIL ACTION

VERSUS                                             No. 13-4873

Y & S MARINE, LLC and                              SECTION: C(2)
HELIS OIL & GAS, LLC

**ORDER AND REASONS**

Before the court is the defendant, Helis Oil & Gas Company's ("Helis") Motion for Summary Judgment. Rec. Doc. 21.  Plaintiff, Todd Romero ("Romero") opposes this motion.  Rec. Doc. 36. The motion is before the Court on the briefs and without oral argument.  Having considered the memoranda of counsel, the record, and the applicable law, the Court has determined that the defendant's motion for summary judgment is DENIED for the following reasons.

**I. BACKGROUND**

Todd Romero filed suit against defendants Y & S Marine and Helis Oil and Gas Company, LLC to recover damages from injuries suffered during an accident occurring on February 3, 2013 while Romero was transferring from a vessel (the M/V SUNDOWNER) owned by Y & S Marine to an oil platform (WBB Well 71) owned by Helis.  Rec. Doc. 1 at 3. At the time of the accident, Romero was employed as a Class A Operator with Wood Group PSN, Inc. ("Wood Group") in Black Bay, Louisiana, just south of Plaquemines Parish. *Id*. at 2.  Helis contracted with Wood Group to provide personnel to operate Helis's platforms and satellite wells through a Master Service Agreement ("MSA") effective November 5, 2007. Rec. Doc. 21, at 2.  The MSA provides

1

Wood Group's employees shall be treated as statutory employees of Helis for purposes of workers compensation claims. Rec. Doc. 21-5 at 3-4. The MSA was in force and effect on February 3, 2013, the date of the alleged incident. Rec. Doc. 21-5 at 2.

The complaint alleges that the accident in question was caused by the negligence of the crew boat and its captain, as well as vessel owner Y & S Marine, by failing to provide a safe means of ingress/egress and by breaching the warranty of seaworthiness. Rec. Doc. 1 at 3. Plaintiff also claims that his injuries and damages were due to the negligence of Helis in failing to prevent an unreasonably dangerous transfer and failing to have the appropriate ingress/egress equipment at WBB Well 71. *Id*.

Helis has moved for summary judgment and points to section 1061 of the Louisiana Workers Compensation Act that covers independent contractors. Under this law, a general contractor who contracts out the whole or any part of the work to a subcontractor becomes the statutory employer of the subcontractor and is thus granted the exclusive remedy protections afforded by workers compensation law. La. Rev. Stat. Ann. § 23:1061(A)(1). This protects the general contractor from further tort claims by the employees of subcontractors who are injured in the course of the contract while performing services essential to the work of the general contractor. *Id*. Because the MSA between Helis and Wood Group contains a provision making Wood Group's employees statutory employees of Helis, Helis claims that the Louisiana Workers' Compensation Act applies and gives Helis immunity from the admiralty tort claims brought by the plaintiff. Rec. Doc. 21-1 at 1.

In opposition, the plaintiff has clarified that he is seeking relief provided under specific provisions of the Longshoreman and Harbor Workers Compensation Act (33

U.S.C. §905(b)) regarding the negligence of vessels.  According to section 905(b) of the LHWCA, Helis may have legal duties as a vessel charterer that are independent of the Louisiana Workers' Compensation Act (La. R.S. §23:1061) and the language of the MSA.  Rec. Doc. 36 at 2.  In other words, the plaintiff is pursuing this tort action against Helis under 33 U.S.C §905(b) to recover damages separate from any workers compensation remedies to which he may be entitled.  Plaintiff also claims an entitlement to proceed against Helis under general maritime law.

## II. Standard of Review

Summary judgment is proper when there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when there is sufficient evidence favoring the non-moving party such that a jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  When reviewing the facts for summary judgment, the court will draw all inferences most favorable to the non-moving party.  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  The court should grant summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of justifying its motion and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, "if the moving party meets this initial burden of showing that there is no genuine issue of material fact, the burden shifts to the

3

non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). The alleged existence of a factual dispute will not defeat an otherwise properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

A motion for summary judgment may be made any time before 30 days after the close of discovery, Fed. R. Civ. P. 56(b), and is available to both parties after adequate time for discovery. *Celotex*, 477 U.S. at 322.

### III. LAW & ANALYSIS

Before the Court can decide if Helis is entitled to summary judgment under the immunities provided by Louisiana's Workers Compensation Act, it must first determine whether the plaintiff's liability claims against Helis qualify for coverage under the Longshore and Harbor Workers Compensation Act or otherwise fall under this Court's admiralty jurisdiction. If so, then the state workers compensation law is not a barrier to recovery. *King v. Universal Elec. Const.*, 799 F.2d 1073, 1074 (5th Cir. 1986); *Thibodaux v. Atl. Richfield Co.*, 580 F.2d 841, 847 (5th Cir. 1978).

**A. The Longshore and Harbor Workers Compensation Act**

The Longshore and Harbor Workers Compensation Act ("LHWCA") protects non-seaman "maritime employees" not covered by the Jones Act by providing

4

"compensation for the death or disability of any person engaged in "maritime employment," § 902(3), if the disability or death results from an injury incurred upon the navigable waters of the United States or any adjoining pier or other area customarily used by an employer in loading, unloading, repairing, or building a vessel, § 903(a)." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 415 (1985) (citing 33 U.S.C §§902-903).  The LHWCA defines "maritime employment" as longshoremen engaged in the loading and unloading of vessels and other harbor workers who perform work such as ship repair, ship maintenance, and ship breaking. 33 U.S.C. §902(3).

The Outer Continental Shelf Land Act ("OCSLA") extends the LHWCA to workers involved in natural resource exploration and extraction on the outer continental shelf. 43 U.S.C §1333(b). The extension of the LHWCA by the OCSLA does not require that a covered worker's injury physically occur on the outer continental shelf ("OCS"); rather, the OCSLA extends LHWCA workers' compensation coverage to any injury, regardless of where it happens, as long as it occurs "as the result of operations conducted on the outer Continental Shelf." *Pac. Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 683 (2012).  However, the OCSLA does not extend to oil workers working on fixed platforms in state territorial waters, defined as within 3 nautical miles of the shoreline. *Herb's Welding*, 470 U.S. at 416.  In *Herb's Welding, Inc. v. Gray*, the Supreme Court held that fixed platform oil workers employed in state territorial waters were not "maritime employees" for the purpose of meeting the LHWCA's status test.  *Id*. at 427; *see also Munguia v. Chevron U.S.A. Inc.*, 999 F.2d 808, 813 (5th Cir. 1993).  To qualify for compensation under the LHWCA, the worker must meet both the situs test and the status test; "the Supreme Court has made it clear that "situs" and "status" are separate,

independent elements and that a claimant must establish both elements to recover benefits." *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 389 (5th Cir. 2013), citing *Herb's Welding*, 470 U.S. at 415-16.

To qualify for coverage under the LHWCA, Romero must show either, that he is a maritime employee injured while working on navigable waters or adjacent structures used for the loading and unloading of vessels (33 U.S.C §§902-903), or that his injury occurred "as a result of operations conducted on the outer continental shelf." *Pac. Operators*, 132 S. Ct. at 683.  Although he was injured while transferring from a vessel to an adjacent structure on navigable waters, as a Class A Operator on a fixed oil platform, Romero does not meet the status of "maritime employment" outlined in the LHWCA (§902(3)) and reinforced by the Court in *Herb's Welding*. *Herb's Welding*, 470 U.S. at 427.  Therefore, to qualify for the LHWCA, Romero would have to establish a "substantial nexus" between his injury and his employer's extractive operations on the OCS. *Pac. Operators*, 132 S. Ct. at 691.  Because his sole place of employment was in the Black Bay of Louisiana (state territorial waters), and because he has failed to establish a link between his work as a Class A Operator in Black Bay and any offshore operations by his employer on the OCS, Romero does not qualify for coverage under the LHWCA. Schott Aff. Ex. A Rec. Doc. 21-3, at ¶4.  His tort claim against Helis under §905(b) of the LHWCA is therefore also invalid, because to make a third party claim against a vessel under §905(b), a worker must first qualify for LHWCA coverage.

**B. General Maritime Tort Claims**

Despite Romero's failure to qualify for benefits under the LHWCA, he may still be able to pursue his general maritime law claims against Helis under federal admiralty

law.  "An exclusive remedy provision in a state workmen's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law."  *Thibodaux v. Atl. Richfield Co.*, 580 F.2d 841, 847 (5th Cir. 1978); *see also Green v. Vermilion Corp.*, 144 F.3d 332, 341 (5th Cir. 1998) (holding that the exclusive remedy provision of the Louisiana Workers' Compensation Act did not preclude a duck camp worker injured while mooring a boat from asserting a general maritime negligence claim against his employer for the non-fatal injuries he sustained during the course of his employment while upon navigable waters).

To determine whether Romero can bring his general maritime claim for negligence against Helis, the Court must determine whether his cause of action falls within admiralty jurisdiction.  For a cause of action to qualify for admiralty jurisdiction it must meet the two-part test of location and connection to maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 527 (1995).  To meet the location test, the tort must occur on navigable water or the party must show that a vessel on navigable water caused an injury suffered on land. *Id*.  To meet the connection, or nexus, test, the party must show a substantial relationship between the activity giving rise to the incident and traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 364 (1990).

Romero's claims of negligence and unseaworthiness against the vessel, which was operating on navigable waters, clearly meets location requirements of the adirmalty jurisdiction test.  Even though his actual injuries were sustained on the satellite well, Rec. Doc. 1 at 3, his claim that the proximate cause of his injuries was the failure of the boat to provide safe egress meets the locality requirement under the Extension of Admiralty

7

Jurisdiction Act, 46 U.S.C. § 740, which makes "vessels on navigable water liable for damage or injury 'notwithstanding that such damage or injury be done or consummated on land,'" *Gutierrez v. Waterman S. S. Corp.*, 373 U.S. 206, 209 (1963) (quoting 46 U.S.C. § 740) (current version at 46 U.S.C. 30101).

The nexus test of admiralty jurisdiction requires the plaintiff to show that his injuries occurred in connection with traditional maritime activities. *Sisson*, 497 U.S. at 364. This requirement is met in this case by virtue of the maritime activities of Helis's co-defendant, Y & S Marine, owners of the M/V SUNDOWNER. *See Grubart*, 513 U.S. at 541 ("[A]s long as one of the putative tortfeasors was engaged in traditional maritime activity, the allegedly wrongful activity will "involve" such traditional maritime activity and will meet the second nexus prong."). The activity of the M/V SUNDOWNER in ferrying Romero between platforms located within navigable waters meets the requirement of traditional maritime activity, namely navigation and docking. *See Sisson*, 497 U.S. at 367. Therefore, Romero's negligence claims against Helis, as co-tortfeasor, meet both the location and the nexus requirement necessary for admiralty jurisdiction.

**C. Louisiana Workers' Compensation Act**

Because the Louisiana Workers' Compensation Act does not afford Helis immunity from Romero's general admiralty claims, the court declines to investigate Helis' allegations regarding the nature of the employment relationship between itself and Romero at this time. A determination that Romero is a statutory employee of Helis would not preclude his claims against Helis in general maritime law, *See Green,* 144 F.3d

at 341; *King*, 799 F.2d at 1074; *Thibodaux*, 580 F.2d at 847, and therefore Romero should be able to move forward with his maritime tort claims under admiralty jurisdiction.

### III. CONCLUSION

As an offshore oil worker on a fixed platform in Louisiana state territorial waters, Romero does not qualify for separate tort recovery for vessel negligence under the LHWCA. However, because his claims fall under admiralty jurisdiction, Romero can sue Helis for negligence under general maritime law independent of the immunities established for statutory employers by the Louisiana Workers' Compensation Act. Therefore, Helis's claim that state workers' compensation laws provide it with immunity from additional liability by the plaintiff is incorrect.

Accordingly,

IT IS ORDERED that defendant Helis's motion for summary judgment is DENIED.

New Orleans, Louisiana, this 2nd day of July, 2014.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE